UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
WAYNE MARTIN,

<table>
<tr><td>Plaintiff,</td><td><strong><u>MEMORANDUM AND ORDER</u></strong><br>2:17-cv-4907 (DRH)(AKT)</td></tr>
</table>

   - against –

DESIGNATRONICS INC., DYSON, DYSON
& DUNN, INC., and ROBERT KUFNER, in
his individual and professional capacities,

                           Defendants.
---------------------------------------------------------X

**APPEARANCES**

**WIGDOR LLP**
Attorneys for Plaintiff
85 Fifth Ave., Fifth Floor
New York, NY 10003
By:    David Evan Gottlieb, Esq.
        Kenneth Daniel Walsh, Esq.


**FORCHELLI CURTO DEEGAN SCHWARTZ MINEO & TERRANA, LLP**
Attorneys for Defendants
333 Earle Ovington Blvd., Suite 1010
Uniondale, NY 11553
By:    Gregory Scot Lisi, Esq.
        Frank W. Brennan, Esq.
        Lisa M. Casa, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Wayne Martin ("Plaintiff") brought the instant action against Defendants Designatronics Inc. ("Designatronics"), Dyson, Dyson & Dunn, Inc. ("Dyson"), and Robert Kufner ("Kufner," collectively, "Defendants") alleging unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981 and the New York State Human Rights Law ("NYSHRL"). Presently before the Court is Defendant Dyson's motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(2) for lack of personal jurisdiction, and pursuant to Rule 12(b)(5) for insufficient service of process. Also before the Court is Defendants' joint motion to dismiss the Complaint pursuant Rule 12(b)(6) for failure to state a claim, and pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction. For the reasons discussed below, the motions to dismiss are granted in part and denied in part.

## BACKGROUND

The following relevant facts come from the Amended Complaint ("Am. Compl.") and are assumed true for purposes of the motions to dismiss.

Plaintiff was hired by Designatronics on December 23, 2013, as Vice President of operations. (Am. Compl. [ECF No. 34] ¶ 1.) Plaintiff oversaw and managed the consolidation of Designatronics' production facilities from four locations into one, and was awarded a $20,000 bonus in recognition of his success in overseeing the relocation process in March 2017. (*Id.* ¶¶ 5–6.)

When Plaintiff joined Defendant Designatronics, Defendant Kufner held the position of President and CEO. (*Id.* ¶ 8.) Plaintiff alleges that he carried out all of his own responsibilities, as well as those of Kufner, who "spent hours per day playing online videogames, thereby forcing

[Plaintiff] (and others) to carry out his jobs, such as conducting performance reviews." (*Id.* ¶ 9.) Plaintiff also claims that Kufner incessantly boasted about his closeness with the executive leadership of Designatronics' parent company, Dyson, and that this "sent a clear message to everyone around him that he was 'untouchable' and could wield unchecked power over anyone who chose to cross him." (*Id.* ¶ 14.)

The Amended Complaint sets forth numerous instances of Kufner's misconduct, both general and specific, including one instance in the Winter of 2015 when Kufner told Robert Nelson ("Nelson"), the head of Human Resources ("HR"), that a female payroll manager was a "fat slob." (*Id.* ¶ 24.) On another occasion Kufner used offensive language to refer to African American football players in conversation with Nelson. (*Id.* ¶ 19.) Kufner made similar remarks about African American football fans to Plaintiff. (*Id.*) Plaintiff summarized the remarks relayed to him by Nelson in a protected complaint to HR in February 2017. (*Id.* ¶ 20.) Kufner later inappropriately touched a female finance manager, Josephine Borzacchiello, on the calf when they were discussing an exercise machine. (*Id.* ¶ 26.) Ms. Borzachiello immediately filed a sexual harassment complaint against Kufner and told the then-Chairman of the Board of Directors, Michael Walsh, that she thought Kufner was a "sexual predator." (*Id.* ¶ 27.) In early 2017, in the context of reviewing a customer service employee's performance, Kufner referred to the employee as "a gay." (*Id.* ¶ 30.) Plaintiff escalated this comment to HR as well. (*Id.*) Plaintiff also asserts that in the first 6 months of 2017 he met with Walsh and Nelson "at least once a month to escalate complaints about Kufner's behavior." (*Id.* ¶ 32.)

The Complaint includes numerous allegations of retaliation by Kufner against employees who complained about him. Kufner apparently made one woman cry when he found out she spoke to HR about him, and he eventually played a primary role in bringing about her dismissal.

(*Id.* ¶ 38.)  On October 26, 2016, Nelson informed Plaintiff that Kufner had threatened him with termination after learning that he had spoken with Walsh and an internal auditor about Kufner's behavior.  (*Id.* ¶ 39.)  Specifically, Kufner told Nelson, "I'm connected[;] if you can't be loyal, you'll go the way of your predecessor."  (*Id.* ¶ 40.)

In early April 2017, Plaintiff along with Nelson and Walsh (the "Officers") began meeting daily to draft a performance improvement plan "merely to give [] Kufner a warning." (*Id.* ¶¶ 45–46.)  During the course of the investigation, the Officers concluded that Kufner's behavior was "so wholly inappropriate and offensive that it could not be tolerated and required immediate termination."  (*Id.* ¶ 47.)  The Officers drafted a memorandum laying out the basis for Kufner's termination, though the memorandum focused more on Kufner's video gaming and less on his harassment.  (*Id.* ¶¶ 49–52.)  On April 10, 2017, at his termination meeting, Kufner did not contest the contents of the memorandum.  (*Id.* ¶ 54.)  Four days after Kufner's termination, an anonymous letter addressed to Kufner was mailed to Defendant Designatronics, requesting that Defendants investigate Plaintiff for his "alleged badmouthing of Kufner[.]"  (*Id.* ¶ 56.)

On June 14, 2017, Walsh received an unexpected call from Robert Dyson, who asked Walsh to resign from his role as Chairman of the Board of Directors of Designatronics.  (*Id.* ¶ 60.)  Walsh complied with the request and recommended that Plaintiff take on the role of President and CEO full-time.  (*Id.* ¶ 61.)  However, on July 10, 2017, John Dyson and Derry McCauley—two senior employees of parent company Dyson—made an unexpected visit to Designatronics and announced that Kufner was being rehired as President and CEO.  (*Id.* ¶¶ 62–63.)  Plaintiff later learned that Kufner's rehiring was actually made effective weeks earlier, the day after Walsh had been asked to resign.  (*Id.* ¶ 64.)  Within hours of his arrival, Kufner called Plaintiff into a meeting and terminated him without providing any basis.  (*Id.* ¶¶ 65–66.)

Plaintiff commenced the instant action on August 21, 2017, and filed an Amended Complaint on February 27, 2018.

## DISCUSSION

I.  *Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction as to Defendant Dyson*

A.  Rule 12(b)(2) Legal Standard

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing jurisdiction over the defendant.  *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996).  A plaintiff may defeat the defendant's Rule 12(b)(2) motion "by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence."  *Mortg. Funding Corp. v. Boyer Lake Pointe, L.C.,* 379 F. Supp. 2d 282, 285 (E.D.N.Y.2005).  Moreover, given the early stage of the proceedings here, the Court must view the pleadings in a light most favorable to the plaintiff, *see Sills v. The Ronald Reagan Presidential Found., Inc.,* 2009 WL 1490852, *5 (S.D.N.Y. May 27, 2009), and when evidence is presented, "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party," *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 80 (2d Cir. 1993).  However, the Court is not bound by conclusory statements, without supporting facts.  *Jazini v. Nissan Motor Co. Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998).

In a diversity case, a federal district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution.  *See Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001).  In New York, courts may exercise either general or specific jurisdiction over defendants.  Pursuant to general jurisdiction, courts in New York can adjudicate *all* claims against an individual or a corporation, even those unrelated to its contacts with the state.  *Sonera*

*Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). "[G]eneral jurisdiction [over a corporation] exists only when a corporation's contacts with [New York] are so continuous and systematic as to render [it] essentially at home" in New York. *Id.* (internal quotation marks and citations omitted).

The existence of specific jurisdiction "depends on an affiliation between the forum [state] and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citations omitted). C.P.L.R. § 302(a), New York's "long-arm" statute, allows for specific jurisdiction over non-domiciliaries and provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state." Courts have found that this subsection of New York's long-arm statute effectively has two prongs: "(1) '[t]he defendant must have transacted business within the state,' either itself or through an agent, and (2) 'the claim asserted must arise from that business activity.'" *Powell v. Monarch Recovery Management, Inc.*, 2016 WL 8711210, at *6 (E.D.N.Y. 2016) (quoting *Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006))).

"When analyzing jurisdiction under the [']transacts business['] clause, courts examine 'the totality of the defendant's activities within the forum' in order to determine if the defendant's 'transacted business' can be considered purposeful." *Powell*, 2016 WL 8711210, at *6 (quoting *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 335 (E.D.N.Y. 2013) (quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Investors*, 510 F.2d 870, 873 (2d Cir.

1975))). Conclusory allegations of transacting business are insufficient; in fact, "courts have regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contact with the forum state." *See id.*; *Doe v. Del State Police*, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013). On the other hand, the Second Circuit has explained that "proof of one transaction, or a single act, in New York [is] sufficient to invoke long-arm jurisdiction even though the defendant never enters New York." *Allied Dynamics Corp. v. Kenmetal, Inc.*, 965 F. Supp. 2d 276, 293 (E.D.N.Y. 2013) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007)) (internal quotation marks omitted).

"A plaintiff attempting to establish personal jurisdiction over a defendant who has never been present in the state and only acted through subsidiaries or agents need only show that the subsidiary 'engaged in purposeful activities in this State,' that those activities were 'for the benefit of and with the knowledge and consent of' the defendant, and that the defendant 'exercised some control over' the subsidiary in the matter that is the subject of the lawsuit.'" *Jensen v. Cablevision Systems Corp.*, 2017 WL 4325829, at *7 (E.D.N.Y. Sept. 27, 2018) (quoting *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 476–77 (E.D.N.Y. 2015)). A formal agency relationship between the parent and subsidiary is not required, because "[p]ersonal jurisdiction over a parent corporation whose subsidiary has transacted business in New York exists when the nondomiciliary parent corporation knew of and consented to the acts of its in-state subsidiary that gave rise to the cause of action, and exercised some control over [the subsidiary] in the matter." *Id.* at *8 (internal quotation marks omitted).

B. The Parties' Arguments

Defendant Dyson avers that it is not subject to personal jurisdiction for the following reasons. First, because Plaintiff made no allegation that Dyson had knowledge of Plaintiff's

complaints.  (Mem. in Supp. [ECF No. 43] at 9.)  Second, because Plaintiff made no allegations

that Dyson engaged in any retaliatory acts.  (*Id.*)  Third, because Plaintiff made no allegation that

Dyson is the parent company of Defendant Designatronics.  (*Id.*)  Fourth, because Plaintiff made

no allegation that Robert Dyson or Durham S. McCauley were employed by or had any control

over Dyson.  (*Id.*)  And finally, because Plaintiff made no allegations that the actions engaged in

by Robert Dyson and Durham S. McCauley—as members of Designatronics' Board of Directors

at the time—were executed on behalf of Defendant Dyson as opposed to the Designatronics

Board.  Plaintiff responds that personal jurisdiction exists over Defendant Dyson because

Designatronics is a subsidiary of Dyson; Dyson knew of and consented to the acts of its in-state

subsidiary that gave rise to the cause of action; and Dyson exercised some control over the

subsidiary in the matter.  (Mem. in Opp. at 10 (citing *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d

462, 477 (E.D.N.Y. 2015).)

> ### C.  The Motion to Dismiss Pursuant to Rule 12(b)(2) as to Defendant Dyson is Denied

When ruling on a 12(b)(2) motion, the Court may rely on additional materials outside the

pleading.  *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016); *John Hancock*

*Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, 91 Civ. 3644 (CES), 1992 WL 26765, at

*1 n. 1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co.*

*Ltd.*, 568 F.Supp.2d 329, 334 (S.D.N.Y.2008).  "If the parties present conflicting affidavits,

however, 'all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie

showing is sufficient notwithstanding the contrary presentation by the moving party.'"  *In re*

*Banco*, 277 F. Supp. 3d 600, 630 (S.D.N.Y. 2017) (quoting *Seetransport Wiking Trader*

*Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989

F.2d 572, 580 (2d Cir. 1993)).

Based on the allegations in the Amended Complaint as well as the Affidavits and other materials submitted in opposition to the instant motion, Plaintiff has made a prima facie showing of personal jurisdiction over Defendant Dyson. *See Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) ("If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction").

Defendant Dyson does not dispute that Defendant Designatronics is a subsidiary. Instead, in its Reply Memorandum it argues that the relevant question is whether Designatronics is an "agent" or "mere department" of Dyson pursuant to a test set forth in an older decision from the Southern District of New York. *See Williamson ex. rel. At Home Bondholders' Liquidating Trust v. Verizon Communications Inc.*, 2013 WL 227691, at *1 (S.D.N.Y. Jan. 22, 2013). However, as explained in the more recent *Ingenito* decision, Plaintiff is not required to show that Designatronics is an agent or mere department; rather, Plaintiff must show that (1) Defendant Designatronics is a subsidiary of Defendant Dyson; (2) Defendant Designatronics, as the subsidiary, engaged in purposeful activities in this State; (3) those activities were for the benefit of and with the knowledge and consent of Defendant Dyson; and (4) Dyson exercised some control over Designatronics in the matter of Plaintiff's termination. *See* 89 F. Supp. 3d at 476–77.

As to the first element, the Complaint's description of Defendants Designatronics and Dyson make no mention of whether the former is wholly owned by or a subsidiary of the latter. (See Am. Compl. ¶¶ 6–7.) Elsewhere in the Amended Complaint, Defendant Dyson is called Defendant Designatronics' "parent company." (Am. Compl. ¶ 12.) However, this ambiguity is

resolved in an attachment to Plaintiff's Declaration, which is also referenced in Defendants'

Reply in Opposition: namely, a copy of Dyson's Amended Restated Bylaws providing that

Defendant Designatronics is controlled by or under common control with Dyson. (*See* Am.

Restated Bylaws, Ex. 10 to Gottlieb Dec. [DE 44-1] ¶ 7.) Notably, Defendants do not dispute

that Defendant Designatronics is a subsidiary or under common control. Instead, Defendants

split hairs over inconsequential minutia. As factual disputes (if this can even be considered a

dispute) are resolved in Plaintiff's favor, this is sufficient for a prima facie showing that

Defendant Designatronics is a subsidiary of Defendant Dyson.

Regarding the second element, there is no question that Designatronics engaged in

purposeful activities in New York State as the Complaint alleges—and Defendants do not

contest—that its principal place of business is in Hicksville, New York. (Am. Compl. ¶ 6.) As

to the third element, Defendant Designatronics' activities in the State of New York would benefit

Defendant Dyson if it was controlled by or under common control with Dyson. Likewise, Dyson

must have had knowledge of Designatronics' activities in New York as Designatronics is

Dyson's wholly owned subsidiary and Designatronics is headquartered here in New York. With

regards to the final element, the Complaint sets forth sufficient allegations for a prima facie

showing that Defendant Dyson was involved in Plaintiff's termination. For example, the

Complaint states that Robert Dyson of Defendant Dyson, called Walsh to ask him to resign,

which is apparently due to Walsh's involvement in Kufner's termination. (*Id.* ¶¶ 60–61.)

Shortly thereafter, Durham McCauley and John Dyson (also "of" Defendant Dyson) made an

unexpected visit to Designatronics and announced that Kufner was being rehired as President

and CEO. (*Id.* ¶¶ 62–63.) That same day, Kufner fired Plaintiff without any basis, allegedly in

retaliation for Plaintiff's involvement in his own termination. (*Id.* ¶¶ 65–66.) Based on these

allegations, Defendant Dyson appears to have been involved in the hiring and personnel decisions that directly led to Plaintiff's termination.

Defendant Dyson argues in response that Robert Dyson's, Durham McCauley's, and John Dyson's involvement in Designatronics was undertaken as members of Designatronics' Board of Directors, and not in a capacity related to Defendant Dyson. Defendants point to the Shareholder Resolutions as evidence that Robert Dyson, Durham McCauley, and John Dyson held no title at Defendant Dyson until August 4, 2017, three weeks after Defendant's termination, when they were elected as Directors. The Court finds this argument unconvincing, as the fact that these three people were not Directors of the Corporation until shortly after Plaintiff's termination does not mean that they were not involved with and representing Defendant Dyson's interests as senior employees of Dyson in their interactions with Defendant Designatronics before that time. The Court does not have sufficient information before it to understand the contours of Robert Dyson's, Durham McCauley's, and John Dyson's roles at Defendant Dyson versus Defendant Designatronics. More importantly, Defendants do not provide sufficient information in their moving papers for the Court to determine that these gentlemen were *not* working for Defendant Dyson. At this stage, "'all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'" *In re Banco*, 277 F. Supp. 3d at 630 (quoting *Seetransport Wiking*, 989 F.2d at 580). Accordingly, the motion to dismiss pursuant to Rule 12(b)(2) is denied.

II.    *The Motion to Dismiss Pursuant to Rule 12(b)(5) for Insufficient Service of Process as to Defendant Dyson*

A. Rule 12(b)(5) Legal Standard

On a motion to dismiss under Rule 12(b)(5) challenging the sufficiency of service of process, it is the plaintiff's burden of proof to establish the adequacy of service. *Hertzner v. U.S.*

*Postal Serv.*, No. 05-CV-2371, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007). In considering the motion, the court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was adequate. *Werst v. Sarar USA Inc.*, No. 17-CV-2181, 2018 WL 1399343, at *2 (S.D.N.Y. Mar. 16, 2018).

Fed. R. Civ. P. 4 ("Rule 4") governs the requirements for sufficient service of process. Under Rule 4(e), service upon an individual is made by either (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or (2) "delivering a copy of the summons and of the complaint to the individual personally" or "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there" or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process[.]" Rule 4(e)(2).

Here, the relevant state laws are New York law and Illinois law. New York Civil Practice Law and Rules ("CPLR") § 311(a)(1) provides in relevant part that personal service upon a corporation may be made by delivering the summons

> Upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any agent authorized by appointment or by law to receive service.

A business corporation may also be served pursuant to New York Business Corporation Law § 306, which concerns service of process on the secretary of state as agent of a domestic foreign corporation, which is not at issue here. Illinois Code of Civil Procedure § 2-204 provides that service on a private corporation may be made

> (1) By leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also

be notified by publication and mail in like manner with like effect as individuals.

    B.  The Motion to Dismiss Pursuant to Rule 12(b)(5) is Granted as to Defendant Dyson Unless Plaintiff Effects Proper Service on or Before March 8, 2019

Plaintiff served Defendant Dyson on August 22, 2017, at their headquarters in Illinois by leaving the summons and Complaint with Joanna Inda, who was allegedly "authorized to accept" service and who Defendants concede was acting as the receptionist on that day. (*See* Aff. of Service [ECF No. 15] at 1.) Defendants contend that Ms. Inda was not authorized under Illinois law because she did not understand her duty to deliver the summons to Defendant Dyson. Plaintiff's counsel then reached out to Defendants' counsel on November 14, 2017, to ask if they would consent to waive service on behalf of Defendant Dyson, as the expiration of time to serve Dyson had not expired. (*See* E-mail from Kenneth Walsh to Frank Brennan (Nov. 14, 2017) Ex. 3 to Compl. [ECF No. 44-1].) Plaintiff's counsel sent a follow-up e-mail on November 16, 2017, but received no response to either contact. (E-mail from Kenneth Walsh to Frank Brennan (Nov. 16, 2017) Ex. 4 to Compl. [ECF No. 44-1].) Plaintiff provides no explanation for why he did not serve Defendant Dyson again after Defendants refused to waive service by their silence.

Plaintiff cites to a case, *A-Z Equip. Co. v. Moody*, in which the Illinois Appellate Court held that service was proper when the summons was left with a secretary on duty. 410 N.E. 2d 438, 441 (Ill. App. Ct. 1980). However, in that case the defendant's office was also his residence. *Id.* Moreover, subsequent cases have narrowed the holding in *A-Z Equip.*, and found that service on a receptionist was not proper barring a regular custom or practice. *See Iosello v. Lexington Law Firm*, 2003 Wl 21920237, at *3 (N.D. Ill. Aug. 12, 2003). For example, in *Knapp v. Bulun*, the Appellate Court held that service on a paralegal and secretary "did not constitute proper service on the corporation." 392 Ill. App. 3d 1018, 1030 (Ill. App. Ct. 2009);

see *also Hester v. N. Barrington Prof. Ctr. Condominium Ass'n*, 2013 WL 5494089, at *6 (Ill. App. Ct. Sept. 30, 2013) (citing the same and finding that the Court did not acquire personal jurisdiction over a defendant when the sheriff served a summons on a secretary because this person "was not an officer, the registered agent, or an agent designated to accept service on behalf of [defendant]").[1]

In the alternative, Plaintiff contests that Ms. Inda was an appointed officer at the time of the purported service of process. (Mem. in Opp. [ECF No. 44] at 8.) In support, Plaintiff cites to a resolution adopted by Barbara Dyson and Peter Dyson on January 17, 2013, showing that Joanne Inda was an elected officer of Defendant Dyson, holding the "Secretary" position. (Unanimous Written Consent, Ex. 11 to Mem. in Opp. [ECF No. 44-1].) As Defendants point out in their Reply, Plaintiff also attached a more recent resolution adopted by Defendant Dyson's Shareholders showing that Ms. Inda was no longer an elected officer as of August 4, 2017. (Unanimous Written Consent, Ex. 9 to Mem. in Opp. [ECF No. 44-1].) Given that the Affidavit of Service indicates that Defendant Dyson was served on August 22, 2017—after Ms. Inda was removed as an elected officer—Plaintiff's alternative argument is unavailing.

Therefore, the Court finds that service was insufficient pursuant to Rule 4 and the Illinois Code of Civil Procedure. Plaintiff states in his Memorandum in Opposition, that to the extent that the Court finds service to be insufficient, they request an extension of the deadline to serve Defendant Dyson. In light of Defendants' refusal to even respond to Plaintiff's communications regarding waiving of service, the Court grants Plaintiff's request for an extension. *See Zapata v.*

---

[1] Plaintiff also cites to *Arbitron, Inc. v. Marathon Media, LLC*, 2008 WL 892366 (S.D.N.Y. Apr. 1, 2008), which pre-dates the *Knapp* decision. Finally, Plaintiff cites to the recent case *Acosta v. Ashley's Quality Care, Inc.*, in which the Northern District of Illinois found that service on a secretary was proper when the uncontroverted affidavit from the process service supported that the secretary had "affirmatively represented that she was authorized to accept service." 2018 WL 1621021, at *3 (N.D. Ill. Apr. 4, 2018). No such affidavit has been submitted in this matter.

*City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) (holding that "district courts have discretion to grant extensions even in the absence of [a showing of] good cause); *see also* Fed. R. Civ. P. 4(d)(2) ("If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the Court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses"). As such, the motion to dismiss pursuant to Rule 12(b)(5) is granted unless Plaintiff effects proper service on Defendant Dyson and files a new affidavit of service on or before March 8, 2019.

III.    *The Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim as to All Defendants*

A.  Rule 12(b)(6) Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

> B. The Motion to Dismiss Pursuant to Rule 12(b)(6) is Denied as to All Defendants

Defendants motion papers are extremely vague and fail to make any reference to Rule 12 and how it applies to each of their arguments. As such, the Court is left to assume that Defendants' remaining points in their Memorandum of Law are advanced in support of their Rule 12(b)(6) motion to dismiss. These points are as follows: (1) Defendant Dyson was not Plaintiff's employer under Title VII, and (2) Plaintiff has failed to set forth a prima facie cause of action for retaliation against Defendants Dyson, Designatronics, and Kufner under Title VII, § 1981, or the NYSHRL. The Court will address each of these in turn.

1.    Whether Defendant Dyson was Plaintiff's Employer Under Title VII

Defendants argue that Defendant Dyson was not Plaintiff's employer for purposes of Title VII.  Defendants correctly note that "the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006).  However, "[u]nder Title VII, courts construe the term employer functionally, to encompass persons who are not employers in conventional terms[.]" *Lation v. Fetner Properteies, Inc.*, 2017 WL 6550691, at *3 (S.D.N.Y. Dec. 22, 2017) (quoting *Kology v. My Space NYC Corp.*, 177 F. Supp. 3d 778, 781 (E.D.N.Y. 2016)) (internal quotation marks omitted).  To qualify as an employer, "the putative employer must nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *Id.*

There are generally two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer." *Shiflett v. Scores Holding Co., Inc.*, 601 F. App'x 28, 30 (2d Cir. 2015).  The first of these doctrines, the single employer doctrine, provides that "separate corporations under common ownership and management . . . can be deemed to constitute a single enterprise." *Id.* (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005)).  Under the second, the joint employer doctrine, "an entity other than the employee's formal employer can be held liable not because it is part of a 'single integrated enterprise' but rather because the two entities 'handle certain aspects of their employer-employee relationship jointly." *Id.*  In either scenario, "[w]hether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss." *Jianjun Chen v. 2425 Broadway Chao Restaurant, LLC*, 2017 WL 2600051, at *7 (S.D.N.Y. June 15, 2017) (quoting *Brown v. Daikin Am. Inc.*, 756 F. 3d 219, 226 (2d Cir. 2014)).  The same

is true of the joint-employer inquiry. *See Jianjun*, 2017 WL 2600051, at *7 (citing *Div. 1191 Amalgamated Trans. Union v. N.Y.C. Dep't of Educ.*, 2014 WL 4370724, at *9 (S.D.N.Y. Aug. 27, 2014)). For purposes of a motion to dismiss, Plaintiff has made out a prima facie case that Defendant Dyson is his employer as he alleges that it is the parent company of his direct employer and it was involved in personnel decisions—specifically terminating an acting President/CEO and re-hiring Kufner. The ultimate inquiry into whether Defendant Dyson was his employer for Title VII purposes is a question of fact that is not susceptible to resolution in a motion to dismiss context.

### 2. Whether Plaintiff Set Forth a Retaliation Claim Against All Defendants

Defendants also argue that the Amended Complaint must be dismissed because Plaintiff has failed to set forth a prima facie cause of action for retaliation under either Section 1981, Title VII, or the NYSHRL. (Mem. in Supp. at 16.)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). As to the second or causation element, "a plaintiff must plausibly plead a connection between the act and his engagement in [the] protected activity . . . . A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment

action." *Id.* (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). To set forth a

claim for an adverse retaliatory action that transpired "because" a plaintiff made a charge, the

plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's action.

*Vega*, 801 F.3d at 90 (citing *Univ. of Texas Southwestern Medical Ctr. v. Nassau*, 570 U.S. 338,

360 (2013)). "[B]ut-for causation does not[, however,] require proof that retaliation was the only

cause of the employer's action, but only that the adverse action would not have occurred in the

absence of the retaliatory motive." *Vega*, 801 F.3d at 91 (quoting *Zann Kwan v. Andalex Grp.*

*LLC*, 737 F.3d 834, 846 (2d Cir. 2013)) (alteration in original, internal quotation marks omitted).

Moreover, "the but-for causation standard does not alter the plaintiff's ability to demonstrate

causation . . . through temporal proximity." *Id.* Finally, when considering the viability of Title

VII claims on a Rule 12(b)(6) motion to dismiss, the Second Circuit has recently clarified that

"the facts alleged in the Complaint must provide at least minimal support for the proposition that

the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d

297, 311 (2d Cir. 2015).

     As "[d]iscrimination claims under § 1981[] and the NYSHRL are analyzed under the

same framework and pleading standard as Title VII claims" the Court will consider Plaintiff's

three retaliation claims simultaneously as they apply to each of the Defendants. *Award v. City of*

*N.Y.*, 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2013)l *see also Ruiz v. Cty. of Rockland*, 609

F.3d 486, 491 (2d Cir. 2010).[2]

---

[2] Plaintiff brings a claim under § 1981, which provides in relevant part that "[a]ll persons within the
jurisdiction of the United States shall have the same right in every State and Territory to make and
enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C.
§ 1981(a). While there are no allegations in the Complaint that Plaintiff is *not* a white citizen, Courts
have interpreted the protections in § 1981 to extend to white citizens as well when they take "action [] to
protest or oppose statutorily prohibited discrimination." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204,

a.  Defendant Designatronics

The first element of a prima facie case for retaliation—that Plaintiff suffered an adverse employment action—is not in dispute with regards to Defendant Designatronics as Designatronics was Plaintiff's direct employer and the company terminated his employment on July 10, 2017.  Accordingly, the Court need only consider whether Plaintiff's employment termination was due to him opposing an unlawful employment practice.

For purposes of this motion to dismiss, Plaintiff has "plausibly plead a connection" between his employment termination and his engagement in a protected activity, namely his active role in reporting and ultimately terminating Defendant Kufner for his allegedly discriminatory, inappropriate, and predatory behavior.  As discussed above, a retaliatory purpose can be shown indirectly by timing, and here Plaintiff submitted a report detailing Defendant Kufner's alarming behavior and simultaneously participated in Kufner's termination in April 2017.  Defendant Kufner then returned to Defendant Designatronics as President and CEO on July 10, 2017, though he was apparently re-hired several weeks prior.  That same day, Kufner, in his position as President and CEO of Designatronics, terminated Plaintiff's employment with the company.  Plaintiff has explicitly averred that his termination was the result of retaliation for him reporting and joining in the decision to end Defendant Kufner's employment.  The facts as alleged in the Amended Complaint are sufficient to establish a prima facie case of retaliation against Defendant Designatronics.

---

226–27 (E.D.N.Y. 2018) (quoting *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012)). Defendants do not raise this argument, but the Court addresses it *sua sponte* to avoid confusion.

b.   Defendant Kufner

As an initial matter, and as Plaintiff concedes, a Title VII claim cannot be sustained against an individual.  *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011).  Accordingly, the Court grants the motion to dismiss the Title VII claim against Defendant Kufner.

With regards to the Section 1981 and NYSHRL claims, the first element of a prima facie case for retaliation—that Plaintiff suffered an adverse employment action—is not in dispute with regards to Defendant Kufner, as Kufner was Plaintiff's direct supervisor and was the one who personally terminated Plaintiff from his employment on July 10, 2017.  Therefore, the Court need only consider whether his employment termination was due to him opposing an unlawful employment practice.

The same analysis set forth for Defendant Designatronics also applies to Defendant Kufner, as Kufner was the person who carried out Plaintiff's termination.  Defendants argue that the Amended Complaint lacks any "specific details" as to how Kufner learned that Plaintiff complained about his discriminatory conduct, and that Kufner may have terminated Plaintiff because of his complaints about Kufner playing video games.  The Court is unpersuaded by this argument.  First, all factual disputes are resolved in Plaintiff's favor on a motion to dismiss.  Second, as explained above, retaliation for the protected activity need not have been the only cause of the employer's action, and the "but-for" causation standard does not alter Plaintiff's ability to demonstrate causation through temporal proximity.  *Vega*, 801 F.3d at 90–91 (citing *Zann Kwan*, 737 F.3d at 845–46.)  Here, Plaintiff participated in Defendant Kufner's termination proceeding and during such proceeding Plaintiff read Kufner a report that included—even if it did not primarily or exclusively focus on—Kufner's harassing behavior.  Plaintiff was then fired without any basis the day that Kufner returned to Defendant Designatronics.  At this stage in the

pleadings, Plaintiff has sufficiently pled but-for causation, and therefore, he has set forth a prima facie case of retaliation against Defendant Kufner.

  c. Defendant Dyson

   Defendants argue that Plaintiff cannot sustain a retaliation claim against Defendant Dyson because it did not carry out an adverse employment action against Plaintiff, and because Plaintiff has not alleged any facts indicating that Defendant Dyson had knowledge of Plaintiff's protected action reporting Kufner. The Court has already found that for purposes of this motion to dismiss, Plaintiff has plead the minimum facts necessary to establish that Defendant Dyson was his employer under Title VII. Insofar as this inquiry applies to Plaintiff's retaliation claim, Plaintiff has sufficiently alleged that Defendant Dyson carried out an adverse employment action against him as he claims that Defendant Dyson was responsible for Defendant Kufner's re-hiring, who immediately terminated Plaintiff without cause. The Amended Complaint alleges that senior employees of Defendant Dyson orchestrated Defendant Kufner's return to its subsidiary Designatronics because members of Dyson's senior management had close personal relationships with Kufner. This, combined with Plaintiff's managerial position in Dyson's subsidiary, his apparently lauded and untarnished employment record for the this subsidiary, his role in Kufner's termination, the direct interference by Dyson employees in the firing of the interim President/CEO Walsh who suggested they hire Plaintiff in his stead, as well as Dyson employee's involvement in re-hiring Kufner, all cumulatively suggest that Defendant Dyson was aware of and involved in Plaintiff's termination. Likewise, the temporal proximity between Kufner's hiring, allegedly at Defendant Dyson's behest, followed immediately by Plaintiff's termination by the person Dyson re-hired is sufficient to suggest a retaliatory purpose. Accordingly, Plaintiff has pled a prima facie case for retaliation against Defendant Dyson.

Defendants' Rule 12(b)(6) motion to dismiss is granted as to Plaintiff's Title VII claim against Defendant Kufner, but denied as to all remaining claims.

IV.    *The Motion to Dismiss Pursuant to Rule 12(h)(3)*

While Defendants state in their papers that they move pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction, they never state why this Court lacks subject matter jurisdiction. In fact, neither Rule 12(h)(3) nor the term subject matter jurisdiction are mentioned anywhere in Defendants' Memorandum in Support after the introduction. (*See* Mem. in Supp. at 1.) The same is true of Defendants' Reply Memorandum. (*See* Reply Mem. [DE 45].) Accordingly, the Court considers this argument abandoned and the motion to dismiss pursuant to Rule 12(h)(3) is denied.

## CONCLUSION

For the foregoing reasons, Defendant Dyson's motion to dismiss pursuant Rule 12(b)(2) for lack of personal jurisdiction is denied. Defendant Dyson's motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process is granted unless Plaintiff effects proper service on Dyson and files an affidavit of service on or before March 8, 2019. Defendants' joint Rule 12(b)(6) motion for failure to state a claim is granted as to the Title VII claim against Defendant Kufner but denied as to all the remaining claims. Finally, Defendants' joint motion to dismiss pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction is denied in its entirety.

**SO ORDERED.**
Dated: Central Islip, New York
February 7, 2019

_____/s/_____

Denis R. Hurley
Unites States District Judge